# Exhibit 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

No. 1:23-CR-40
Hon. Jane M. Beckering

v.

VINCENT TYLER BROWN,

    Defendant.
_____/

**Objection No. 1: Failure to assess a 2 level reduction for being a minor participant.**

USSG §3B1.2(b) states that "[i]f the defendant was a minor participant in any criminal activity, decrease by two levels." Application Note 5. Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." In determining whether a defendant's offense level should be reduced under §3B1.2(b), Application Note 3(C) states whether to apply §3B1.2(b) is a fact-based determination based on the totality of the circumstances.

Note C sets forth a non-exhaustive list of factors:

(i)   the degree to which the defendant understood the scope and structure of the criminal activity;
(ii)   the degree to which the defendant participated in planning or organizing the criminal activity;
(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
(iv)   the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
(v)   question the degree to which the defendant stood to benefit from the criminal activity.

Applying the aforementioned factors to Mr. Brown, undersigned counsel respectfully states that Mr. Brown should receive a 2 level reduction for being a minor participant.

Although Mr. Brown was aware of the scope and structure of the criminal activity, he did not participate in planning or organizing the criminal activity. Rather, it was Mr. Brian Pierce, who had a long-standing relationship with Mr. Johnson, who agreed to make the payments to Mr. Johnson in return for favorable consideration for Philip Alan Brown's (PAB) and Marijuana Michigan Growers Consultants's (MGC) clients. As Mr. Brown stated in his proffer, Mr. Pierce

was making payments to Mr. Johnson before Mr. Brown became associated with PAB. As stated in Mr. Brown's proffer of September 19, 2020:

> Prior to BROWN working with BRIAN PIERCE at PHILIP ALAN CONSULTING (PAC), in about 2015, PIERCE, JOHNSON and BRIEN BAKER entered into an agreement with about ten Chaldeans. When the deal was made, PIERCE was still working as a legislative aide to KLINT KESTO but ran PAC out of DODAK JOHNSON office space. . . PIERCE told BROWN about the deal after BROWN left the legislature and became a partner with PIERCE at PAC. Some of the Chaldeans involved were MARK ASMAR, TERRENCE MANSOUR, ANDREW AKASH, NOWFAL AKASH, KEVIN KEDGBU (phonetic) and FIRST NAME UNKNOWN (FNU) KIEZI. As told to BROWN by PIERCE, the Chaldean group paid over $1 million in cash and checks to PIERCE, JOHNSON and BAKER.

Mr. Brown was not involved in the planning and organizing of the criminal activity. More specifically, the idea of paying Mr. Johnson bribes did not come from Mr. Brown. Rather, the idea of paying the bribes occurred in discussions between Mr. Johnson and Mr. Pierce. Mr. Brown did not exercise decision making authority and took his direction from Mr. Pierce. In discussing the amount of that Mr. Johnson would be paid, in his proffer, Mr. Johnson does not mention that Mr. Brown had any role in determining the amount of the payments. He only mentions Mr. Pierce:

> Mr. Johnson said he had a role in deciding how much PABC would pay to JBJ Ranch in return for him helping to get GPI's application through the process and approved. Mr. Johnson believed Mr. Pierce also had a part in deciding the dollar amount, which ended up being $2,000.00 per month.

Moreover, Mr. Brown Pierce handled the finances of both PAB and MGC.

The nature and the extent of Mr. Brown's participation in the criminal activity was for the most part entertaining clients, meeting with Mr. Johnson to discuss PAB's and MGC's clients, and promoting PAB's and MGC's access to Mr. Johnson. It should also be noted that it was Mr. Pierce who agreed to pay Mr. Johnson's wife for nonexistent book keeping services in order to disguise the payments to Johnson. In fact, Mr. Brown disagreed with the payments to Mr. Johnson's wife and voiced his disagreement with Mr. Pierce but admittedly went along with the payments bat Mr. Pierce's insistence.

As to the final factor, the degree to which defendant stood to benefit from the criminal activity, Mr. Brown shared equally in the profits of PAB and and MGC.

Although Mr. Brown candidly acknowledges that he participated in the bribery scheme, he is certainly less culpable than Mr. Pierce, who as noted was paying bribes prior to Mr. Brown becoming a member of PAB, and was the involved in the discussion on how much Mr. Johnson would be paid.

Respectfully submitted,

s/ Mark J. Kriger
MARK J. KRIGER (P30298)
Attorney for Defendant Brown
645 Griswold Street, Suite 1717
Detroit, Michigan 48226
(313) 967-0100
mkriger@sbcglobal.net

Dated: August 14, 2023